IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-527

 No. COA 19-683

 Filed 5 October 2021

 Durham County, No. 18 CVS 4073

 MICHAEL MOLE’, Plaintiff,

 v.

 CITY OF DURHAM, NORTH CAROLINA, a municipality, Defendant.

 Appeal by Plaintiff from order entered 24 May 2019 by Judge John M. Dunlow

 in Durham County Superior Court. Heard in the Court of Appeals 10 June 2021.

 The McGuinness Law Firm, by J. Michael McGuinness, and Edelstein & Payne,
 by M. Travis Payne, for Plaintiff-Appellant.

 Kennon Craver, PLLC, by Henry W. Sappenfield and Michele L. Livingstone,
 for Defendant-Appellee.

 Essex Richards, P.A., by Norris A. Adams, II, for North Carolina Fraternal
 Order of Police, amicus curiae.

 INMAN, Judge.

¶1 In his first experience negotiating the surrender of an armed and barricaded

 suspect, without another negotiator backing him up, Durham Police Sergeant

 Michael Mole’ might have given up when the suspect’s gun discharged at close range.

 He didn’t, and two hours later he had persuaded the suspect to drop his weapon and

 surrender. The suspect, other citizens, and law enforcement officers were safe. But
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 Sergeant Mole’ was fired because he had secured the suspect’s surrender by

 promising to allow him to smoke a marijuana cigarette once in custody, and he made

 good on the promise immediately following the arrest.

¶2 Sergeant Mole’ sued the City of Durham, alleging that his employer violated

 his rights under the North Carolina Constitution. The trial court dismissed his

 complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure.

¶3 Because the complaint alleges a colorable violation of Article I, Section 1 of the

 North Carolina Constitution, which protects each person’s right to enjoy the fruits of

 their own labor, we hold the trial court erred in dismissing that claim. We otherwise

 affirm the trial court because binding precedent precludes a holding that Sergeant

 Mole’ has a constitutionally protected interest in continued employment under

 theories of due process or equal protection.

 I. FACTUAL AND PROCEDURAL HISTORY

¶4 The complaint pleads the following facts:

¶5 Sergeant Mole’ began working for the Durham Police Department in May 2007.

 He received hostage negotiation training in May 2014, but he did not negotiate a

 barricaded subject or hostage situation until the events giving rise to this case.

¶6 On 28 June 2016, the Durham Police Department dispatched officers to an

 apartment in Durham to serve an arrest warrant on Julius Smoot (“Smoot”). After

 entering the apartment, officers discovered that Smoot had barricaded himself in an
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 upstairs bedroom. Smoot yelled that he had a gun and that he would use it on himself

 in ten minutes unless he was allowed to see his wife and son. The officers retreated

 and requested a hostage negotiator.

¶7 Sergeant Mole’ was the only hostage negotiator on duty at the time. He arrived

 at the apartment five minutes before Smoot’s deadline and began negotiations with

 the primary goals of extending the deadline and keeping Smoot alive. During these

 negotiations, Smoot accidentally discharged his firearm.

¶8 Sergeant Mole’ continued to negotiate with Smoot for approximately two hours.

 During this time, Smoot said he planned to smoke a “blunt,” a marijuana cigarette.

 Sergeant Mole’, reluctant to allow an armed and barricaded subject to impair his

 mental state, asked Smoot to refrain. Sergeant Mole’ promised Smoot that if he

 disarmed and peacefully surrendered, he would be allowed to smoke the blunt.

¶9 Smoot then dropped his gun, handcuffed himself, and surrendered to Sergeant

 Mole’ in the apartment. Still in handcuffs, Smoot asked for his pack of legal tobacco

 cigarettes and lighter, which were on a nearby table, and Sergeant Mole’ handed

 those items to him. Smoot then pulled a marijuana blunt from behind his ear, lit it

 with the lighter, and smoked approximately half of it.

¶ 10 The Durham Police Department launched an internal investigation of

 Sergeant Mole’s actions following Smoot’s peaceful surrender. On 24 October 2016,

 approximately four months after the incident, Sergeant Mole’ was informed in writing
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 that a pre-disciplinary hearing would take place the next day, despite Durham’s

 written policy requiring advance notice of at least three days. Following the hearing,

 Sergeant Mole’s immediate supervisors recommended that he be reprimanded. But

 Durham terminated him.

¶ 11 In November 2018 Sergeant Mole’ filed a complaint alleging Durham had

 violated his state constitutional rights to due process, equal protection, and the fruits

 of his labor under the North Carolina Constitution. The trial court entered an order

 granting Durham’s motion to dismiss the complaint under Rule 12(b)(6) on 22 May

 2019. Sergeant Mole’ appeals.

 II. ANALYSIS

¶ 12 Sergeant Mole’ argues that the facts pled in his complaint support claims for

 violations of his state constitutional rights to due process, equal protection, and the

 fruits of his labor. Article I, Section 1 of the North Carolina Constitution, in a

 provision unique to that document as compared to the federal constitution, protects

 the people’s rights to enjoy the fruits of their own labor. This provision was recently

 applied by our Supreme Court in Tully v. City of Wilmington, 370 N.C. 527, 810

 S.E.2d 208 (2018). Following the Supreme Court’s reasoning in Tully, we hold that

 Sergeant Mole’s complaint adequately pleads a claim for violation of Article I, Section

 1. We are constrained by binding precedents to affirm the trial court’s dismissal of

 his remaining constitutional claims.
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 A. Standard of Review

¶ 13 We review an order granting a 12(b)(6) motion to dismiss de novo to determine

 whether the complaint states a claim under which relief can be granted. Wells Fargo

 Bank, N.A. v. Corneal, 238 N.C. App. 192, 195, 767 S.E.2d 374, 377 (2014). We

 liberally construe the complaint and take the material factual allegations as true. Id.

 Legal conclusions, unlike factual allegations, are not presumed valid. Id.

 B. Fruits of One’s Labor

¶ 14 Sergeant Mole’ argues that his termination violated his right to the fruits of

 his labor guaranteed by Article I, Section 1 of the North Carolina Constitution. This

 provision ensures each person the right to “life, liberty, the enjoyment of the fruits of

 their own labor, and the pursuit of happiness.” N.C. Const. art. I, § 1 (emphasis

 added). Unlike the due process and equal protection provisions of our state

 constitution, which have been interpreted to provide the same protection as

 provisions in the federal constitution, this guarantee has no analogous federal

 constitutional clause. See infra Parts II.C (1) and (2).

¶ 15 The “fruits of their own labor” clause was added to our state constitution in

 1868. It was adopted the same year the Fourteenth Amendment to the United States

 Constitution was ratified, at a time when formerly enslaved persons were newly able

 to work for their own benefit. See John V. Orth, The North Carolina State

 Constitution with History and Commentary 38 (1995) (recognizing that the clause
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 was “an addition that may have been intended to strike an ideological blow at the

 slave labor system”).

¶ 16 Our appellate courts did not consider the clause until the 20th century, when

 it was applied to check the State’s professional licensing powers. See generally, e.g.,

 State v. Harris, 216 N.C. 746, 6 S.E.2d 854 (1940) (dry cleaning); State v. Ballance,

 229 N.C. 764, 51 S.E.2d 731 (1949) (photography); Roller v. Allen, 245 N.C. 516, 96

 S.E.2d 851 (1957) (tile installation). These decisions recognized a person’s ability to

 earn a livelihood as a protected constitutional right and struck down licensing

 restrictions not rationally related to public health, safety, or welfare and not

 reasonably necessary to promote a public good or prevent a public harm. Roller, 245

 N.C. at 518, 96 S.E.2d at 854; Ballance, 229 N.C. at 769-70, 51 S.E.2d at 735.

¶ 17 In recent years, our Supreme Court has extended application of the fruits of

 one’s labor clause beyond licensing restrictions to other state actions that interfere

 with one’s right to earn a livelihood. King v. Town of Chapel Hill held that a town

 ordinance capping towing fees was arbitrary and violated tow truck drivers’ rights to

 enjoy the fruits of their labor. 367 N.C. 400, 408, 758 S.E.2d 364, 371 (2014). Tully

 v. City of Wilmington held that a municipal police department violated a public

 employee’s constitutional right to enjoy the fruits of his own labor when it failed to

 follow its own promotion procedures. 370 N.C. at 539, 810 S.E.2d at 217.

¶ 18 Tully involved a Wilmington police officer who was denied a promotion after
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 he failed a mandatory examination that tested an officer’s knowledge of the law. 370

 N.C. at 528-29, 810 S.E.2d at 211. His exam answers were correct based on the

 current state of the law, but he failed the exam because the answer key was outdated.

 Id. Written department policy laid out the promotion and examination procedures

 and provided that candidates could appeal any portion of the selection process, so the

 officer sought to appeal his test results. Id. at 529-30, 810 S.E.2d at 211. The City of

 Wilmington refused to hear the officer’s appeal, determining the test results “were

 not a grievable item” and that nothing could be done. Id. at 529, 810 S.E.2d at 211

 (quotation marks omitted).

¶ 19 Our Supreme Court held that this denial of process violated the officer’s

 constitutional rights under Article I, Section 1, reasoning the provision applies “when

 a governmental entity acts in an arbitrary and capricious manner toward one of its

 employees by failing to abide by promotional procedures that the employer itself put

 in place.” Id. at 535-36, 810 S.E.2d at 215. It established the following requirements

 to plead such a constitutional claim:

 [T]o state a direct constitutional claim grounded in this
 unique right under the North Carolina Constitution, a
 public employee must show that no other state law remedy
 is available and plead facts establishing three elements: (1)
 a clear, established rule or policy existed regarding the
 employment promotional process that furthered a
 legitimate governmental interest; (2) the employer violated
 that policy; and (3) the plaintiff was injured as a result of
 that violation.
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 Id. at 536-37, 810 S.E.2d at 216.1

 1. Tully and Article I, Section 1 Apply to Mole’s Discipline

¶ 20 In deciding whether Sergeant Mole’ has asserted a valid Article I, Section 1

 claim, we must first resolve whether this state constitutional claim is limited to the

 “employment promotional process” language used by our Supreme Court in Tully. A

 strict reading of Tully would foreclose his claim. However, Tully detailed the

 underlying constitutional injury in that case in terms broader than the promotional

 process, and the logic employed in that decision applies with equal force to the

 disciplinary action taken against Sergeant Mole’. Our understanding of Tully and its

 rationale, combined with its instruction to “give our [state] Constitution a liberal

 interpretation in favor of its citizens with respect to those provisions which were

 designed to safeguard the liberty and security of the citizens in regard to both person

 and property,” id. at 533, 810 S.E.2d at 214 (citation and quotation marks omitted),

 leads us to hold that Article I, Section 1 applies to the disciplinary action taken

 against Sergeant Mole’.

¶ 21 In declaring the existence of a valid claim under Article I, Section 1 in Tully,

 the Supreme Court acknowledged “the right to pursue one’s profession free from

 1 The Supreme Court declined to decide the form of remedy to which a successful Tully

 plaintiff is entitled, leaving that to the trial court to determine based on the facts of the case.
 Id. at 538, 810 S.E.2d at 216.
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 unreasonable governmental action.” Id. at 535, 810 S.E.2d at 215. It did so in part

 based on Presnell v. Pell, which recognized an allegedly unreasonable termination of

 a public school teacher implicated “the right to engage in any of the common

 occupations of life, unfettered by unreasonable restrictions imposed by actions of the

 state or its agencies.” 298 N.C. 715, 724, 260 S.E.2d 611, 617 (1979) (citations and

 quotation marks omitted) (quoted in Tully, 370 N.C. at 535, 810 S.E.2d at 214).2 Tully

 quoted Presnell for the further proposition that “[t]he right of a citizen to live and

 work where he will is offended when a state agency unfairly imposes some stigma or

 disability that will itself foreclose the freedom to take advantage of employment

 opportunities.” Tully, 370 N.C. at 535, 810 S.E.2d at 214-15 (quoting Presnell, 298

 N.C. at 724, 260 S.E.2d at 617). It is undeniable that unreasonable employee

 discipline—including termination—by a government employer implicates this same

 right and raises the same concerns. See Presnell, 298 N.C. at 724, 260 S.E.2d at 617.

¶ 22 The Supreme Court in Tully ultimately announced that “Article I, Section 1

 also applies when a governmental entity acts in an arbitrary and capricious manner

 toward one of its employees by failing to abide by promotional procedures that the

 employer itself put in place.” 370 N.C. at 535-36, 810 S.E.2d at 215. In reaching this

 2 Presnell held that the discharged teacher was not denied due process protections,

 but Tully was not resolved on due process grounds. Tully, 370 N.C. at 532 n.4, 810 S.E.2d at
 213 n.4. The Supreme Court nevertheless relied on Presnell in its Article I, Section 1 analysis
 in Tully. Id. at 534-35, 810 S.E.2d at 214-15. We rely on Presnell to the same extent here.
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 conclusion, Tully relied on the United States Supreme Court’s reasoning in United

 States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 98 L. Ed. 681 (1954), and lower

 court decisions applying Accardi. According to Tully, Accardi and the cases applying

 it “recognize[] the impropriety of government agencies ignoring their own regulations,

 albeit in other contexts.” 370 N.C. at 536, 810 S.E.2d at 215 (citing Accardi, 347 U.S.

 at 268, 98 L. Ed. at 687; then citing United States v. Heffner, 420 F.2d 809, 811-12

 (4th Cir. 1969); and then citing Farlow v. N.C. State Bd. of Chiropractic Exam’rs, 76

 N.C. App. 202, 208, 332 S.E.2d 696, 700 (1985)).

¶ 23 Decisions recognizing the impropriety of government agencies ignoring their

 own rules in “other contexts,” though not directly cited in Tully,3 include the

 termination of public employees in violation of internal disciplinary procedures. See

 Service v. Dulles, 354 U.S. 363, 388-89, 1 L. Ed. 2d 1403, 1418 (1957) (applying

 Accardi to reinstate a foreign service officer fired by the Secretary of State despite a

 federal statute allowing at-will discharge because the agency violated its own

 procedures); Vitarelli v. Seaton, 359 U.S. 535, 545-46, 3 L. Ed. 2d 1012, 1020-21 (1959)

 (reinstating employment of a federal security guard under Accardi because the

 3 Tully cites Accardi, Heffner, and Farlow by way of a “See, e.g.,” signal. 370 N.C. at
 536, 810 S.E.2d at 215. Courts, practitioners, and legal academics use the signal “E.g.,” to
 show that the “[c]ited authority states the proposition; other authorities also state the
 proposition, but citation to them would not be helpful or is not necessary.” The Bluebook: A
 Uniform System of Citation R. 1.2(a) (Colum. L. Rev. Ass’n et al. eds., 21st ed. 2020). In other
 words, Tully acknowledges Accardi’s application beyond the other two decisions cited.
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 agency violated its own procedural rules at his termination hearing). These decisions

 do not interpret North Carolina law. But just as Tully found other decisions applying

 Accardi pertinent, we find the analysis in Dulles and Vitarelli instructive in our

 review of Tully and, for the reasons above, hold that Tully’s articulation of Article I,

 Section 1’s protections extends to the discipline of Sergeant Mole’.

 2. Sufficiency of Mole’s Complaint Under Tully

¶ 24 Having held that the disciplinary procedure at issue here falls within the ambit

 of Tully, we next examine whether the allegations in Sergeant Mole’s complaint

 otherwise satisfy the three elements established by our Supreme Court in that

 decision.4 The first two elements require Sergeant Mole’ to allege the existence and

 violation of an internal employment policy that was “clear [and] established . . . [and]

 that furthered a legitimate governmental interest.” Tully, 370 N.C. at 537, 810

 S.E.2d at 216.

¶ 25 Sergeant Mole’s complaint alleges several policy violations of varying stripes,

 namely: (1) the acting watch commander failed to deploy the hostage negotiation

 team, the Special Enforcement Team, or stage fire and emergency medical services;

 (2) the watch commander negotiated with Smoot without Sergeant Mole’s knowledge;

 (3) an “after-action report/critical incident critique” was not completed; (4) Sergeant

 4 The complaint asserts, and Durham did not contest before this Court, that Sergeant

 Mole’ has no other remedy in state law.
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 Mole’ took Smoot into custody because the designated tactical personnel were never

 deployed; (5) Sergeant Mole’ was not offered psychological services following the

 incident; (6) other officers failed to secure prior written consent to conduct the search

 that initiated the standoff with Smoot; (7) the incident should have been designated

 a high-risk warrant service but was not; (8) Sergeant Mole’ was not provided

 quarterly training and he did not meet annually with the department’s Special

 Enforcement Team as required for hostage negotiators; and (9) Durham gave

 Sergeant Mole’ only 24 hours’ notice of his pre-disciplinary conference instead of the

 minimum 72 hours’ notice mandated by policy.

¶ 26 The first eight policy violations alleged above put Sergeant Mole’ into an

 untenable position, but they do not state a claim under Tully. Tully protects public

 employees from unreasonable violations of employment policies, not field operating or

 training procedures that do not bear upon internal processes governing the employer-

 employee relationship. See Tully, 370 N.C. at 537, 810 S.E.2d at 216 (“Tully’s

 allegations show that the City’s actions injured him by denying him a fair opportunity

 to proceed to the next stage of the competitive promotional process, thereby ‘unfairly

 impos[ing] [a] stigma or disability that will itself foreclose the freedom to take

 advantage of employment opportunities.’ ” (quoting Presnell, 298 N.C. at 724, 260

 S.E.2d at 617) (alteration in original)).

¶ 27 But Sergeant Mole’s allegation that he was given improper and inadequate
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 notice of his pre-disciplinary hearing does fall within Article I, Section 1’s protections.

 This shortened notice period violated Durham’s own employment disciplinary

 procedures. Sergeant Mole’ further alleges that these pre-disciplinary procedures

 were designed to further a legitimate government interest, namely that its employees

 be treated fairly in the administration of discipline. Cf. id. (recognizing “the

 legitimate governmental interest of providing a fair procedure that ensures qualified

 candidates move to the next stage of the promotional process”). Sergeant Mole’ has

 thus pled a redressable violation of his employer’s disciplinary procedures designed

 to further a legitimate governmental interest, in satisfaction of the first two elements

 from Tully.

¶ 28 Sergeant Mole’ has likewise satisfied the final element, injury, based on a

 liberal construction of his complaint. Sergeant Mole’ specifically alleges that “[h]ad

 [he] been afforded his opportunity . . . to prepare at a minimum of three days instead

 of less than 24 hours, Sergeant Mole’ would have had reasonable notice and could

 have better prepared and provided a more comprehensive response.” From there, he

 asserts Durham “failed to comply with mandatory conditions precedent before

 proceeding with dismissal . . . [and] did not comply with its own stated [disciplinary]

 policies,” before alleging Durham’s “conduct including actions and omissions in its

 treatment of Sergeant Mole’ w[as] arbitrary, capricious, irrational and predicated

 upon selective enforcement of personnel and law enforcement policies and disparate
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 treatment in discipline and thereby deprived Sergeant Mole’ of the fruits of [his]

 labors.” These allegations are similar to those held adequate to demonstrate a claim

 in Tully, 370 N.C. at 536-37, 810 S.E.2d at 215-16, and we therefore hold Sergeant

 Mole’ has sufficiently alleged he “was injured as a result of [Durham’s procedural]

 violation[s].” Id. at 537, 810 S.E.2d at 216.5

¶ 29 We acknowledge North Carolina’s general policy of at-will employment, long

 established in common law. See, e.g., Presnell, 298 N.C. at 723-24, 260 S.E.2d at 616

 (“Nothing else appearing, an employment contract in North Carolina is terminable at

 the will of either party.”). We do not hold that Durham could not terminate Sergeant

 Mole’ based on the conduct at issue, or that Durham could not terminate Sergeant

 Mole’ without cause. Given the stage of proceedings, “we express no opinion on the

 ultimate viability of [Sergeant Mole’]s claim.” Id. at 537, 810 S.E.2d at 216. Like the

 Supreme Court in Tully, “we [do] not speculate regarding whether [Sergeant Mole’]

 would [not have been terminated] had [Durham] followed its own [disciplinary]

 policy.” Id. at 537-38, 810 S.E.2d at 216. At this early stage of litigation, we do not

 address whether Sergeant Mole’ must be reinstated or what relief must be afforded

 to him should he prevail, as “[i]t will be a matter for the trial judge to craft the

 5 Durham argues this procedural violation does not rise to a cognizable constitutional

 injury based on Hilliard v. N.C. Dep’t of Corr., 173 N.C. App. 594, 620 S.E.2d 14 (2005).
 Hilliard was decided prior to Tully, did not involve a claim under Article I, Section 1, and is
 therefore not controlling on this issue.
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 necessary relief.” Id. at 538, 810 S.E.2d at 216 (quoting Corum v. Univ. of N.C., 330

 N.C. 761, 784, 413 S.E.2d 276, 290-91 (1992)). We only hold that Durham must follow

 its own disciplinary procedures—created to protect its legitimate governmental

 interest in treating city employees fairly—in discharging Sergeant Mole’. If the

 evidence shows that Durham failed to do so and that Sergeant Mole’ was harmed by

 that failure, Article I, Section 1 of our Constitution provides a remedy.

 C. Due Process and Equal Protection

¶ 30 We next address the two remaining constitutional claims dismissed by the trial

 court. As explained below, we affirm the trial court based on precedent.

 1. Due Process

¶ 31 The Fourteenth Amendment to the United States Constitution provides that

 no state shall “deprive any person of life, liberty, or property, without due process of

 the law.” U.S. Const. amend. XIV, § 1. The North Carolina Constitution provides

 that “no person shall be taken, imprisoned, or disseized of his freehold, liberties, or

 privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or

 property, but by the law of the land.” N.C. Const. art I, § 19. Our state’s “law of the

 land clause is considered ‘synonymous’ with the Fourteenth Amendment to the

 United States Constitution.” Woods v. City of Wilmington, 125 N.C. App. 226, 230,

 480 S.E.2d 429, 432 (1997) (citation omitted). Decisions of the United States Supreme

 Court as to federal due process are “highly persuasive, but not binding on the courts
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 of this State.” State v. Smith, 90 N.C. App. 161, 163, 368 S.E.2d 33, 35 (1988).

¶ 32 In order to succeed on a due process challenge, the plaintiff must first show

 that he “has been deprived of a protected interest in ‘property’ or ‘liberty.’ ”

 Dobrowolska v. Wall, 138 N.C. App. 1, 11, 530 S.E.2d 590, 598 (2000) (quoting Am.

 Mfrs. Mut. Ins. v. Sullivan, 526 U.S. 40, 59, 143 L. Ed. 2d 130, 149 (1999)). The court

 must decide whether the interest relates to a fundamental right “rooted in the

 traditions and conscience of our people.” Reno v. Flores, 507 U.S. 292, 303, 123 L. Ed.

 2d 1, 17 (1993) (citation and quotation marks omitted). “Property interests, of course,

 are not created by the Constitution. Rather they are created and their dimensions

 are defined by existing rules or understandings that stem from an independent source

 such as state law—rules or understandings that secure certain benefits and that

 support claims of entitlement to those benefits.” Bd. of Regents v. Roth, 408 U.S. 564,

 577, 33 L. Ed. 2d 548, 561 (1972). Whether a person’s interest in continued

 employment falls within the scope of constitutional protection is determined under

 the law of the state where the person is employed. Bishop v. Wood, 426 U.S. 341, 344,

 48 L. Ed. 2d 684, 690 (1976).

¶ 33 We are constrained by North Carolina Supreme Court precedent holding that

 employees in this state generally do not have a property interest in continued

 employment. Presnell, 298 N.C. at 723-24, 260 S.E.2d at 616. The Court in Presnell

 held that this rule applies to both private and public employment. Id. (“The fact that
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 plaintiff was employed by a political subdivision of the state does not entitle her to

 tenure . . . .”). The state may create a property interest in employment by statute,

 ordinance, or express or implied contract. Id. at 723, 260 S.E.2d at 616. In the

 absence of any of these, however, no such interest exists. Id. at 723-24, 260 S.E.2d at

 616.

¶ 34 Sergeant Mole’ argues Durham’s internal personnel policies established an

 “indirect or informal” property right in his continued employment. His complaint

 identifies governing provisions such as Durham’s “Disciplinary and Grievance” policy

 and its “practice and custom of commensurate discipline.” However, the complaint

 does not identify any policies that have been incorporated into ordinance or statute

 or included in Sergeant Mole’s employment contract.

¶ 35 We are bound by precedent holding that policies like those identified by

 Sergeant Mole’ do not give rise to a protected property interest. In Wuchte v. McNeil,

 this Court held that a Durham police officer, terminated without being afforded

 procedures provided by the city’s personnel policies, could not state a claim for

 wrongful termination without evidence that his employment contract, a statute, or

 an ordinance provided that he could only be dismissed for good cause. 130 N.C. App.

 738, 741-42, 505 S.E.2d 142, 145 (1998).6 We noted that “[a]n employee is presumed

 6 Wuchte was decided two decades prior to Tully, strictly on due process grounds. 130
 N.C. App. at 744, 505 S.E.2d at 146-47.
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 to be an employee-at-will absent a definite term of employment or a condition that

 the employee can only be fired only ‘for cause.’ ” Id. at 740, 505 S.E.2d at 144 (citation

 omitted). In Wuchte, as in this case, the plaintiff relied on personnel policies that had

 not been enacted as an ordinance, and we held that unilaterally promulgated

 personnel memoranda did not establish a protected property interest. Id. at 742, 505

 S.E.2d at 145.7

¶ 36 By contrast, in Howell v. Town of Carolina Beach, this Court held that a

 manual adopted by the town as an ordinance granted employees a “reasonable

 expectation of employment and a property interest within the meaning of the due

 process clause.” 106 N.C. App. 410, 417, 417 S.E.2d 277, 281 (1992). Sergeant Mole’s

 complaint does not allege that Durham has codified its personnel policies in an

 ordinance.

¶ 37 As we noted above, whether an employee has a constitutionally protected

 interest under the due process clause is not determined by reference to the federal

 constitution but depends on state law. Bishop, 426 U.S. at 344, 48 L. Ed. 2d at 690.

 7 This Court has previously questioned the rationale of this black-letter law. See, e.g.,
 Walker v. Westinghouse Elec. Corp., 77 N.C. App. 253, 259, 335 S.E.2d 79, 83-84 (1985)
 (“[T]here are strong equitable and social policy reasons militating against allowing employers
 to promulgate for their employees potentially misleading personnel manuals while reserving
 the right to deviate from them at their own caprice. Nevertheless, the law of North Carolina
 is clear that unilaterally promulgated employment manuals or policies do not become part of
 the employment contract unless expressly included in it.” (citations omitted)).
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 Federal courts applying North Carolina law have recognized that personnel rules and

 regulations merely supply internal administrative guidelines and do not grant a

 property interest subject to due process protections unless enacted as an ordinance.

 Pittman v. Wilson Cty., 839 F.2d 225, 229 (4th Cir. 1988); Dunn v. Town of Emerald

 Isle, 722 F.Supp. 1309, 1311 (E.D.N.C. 1989).

¶ 38 Sergeant Mole’ notes that he was granted “permanent employee” status after

 a probationary period, and his complaint alleges this status grants him the “right to

 be afforded due process in the disciplinary system.” But without contract provisions

 setting a term of employment or procedures by which the employment might be

 terminated, “permanent” employment is presumed to be terminable at the will of

 either party and does not alone confer a property or liberty interest in continued

 employment. Nantz v. Emp’t Sec. Comm’n, 290 N.C. 473, 477, 226 S.E.2d 340, 343

 (1976). But see Presnell, 298 N.C. at 724, 260 S.E.2d at 617 (“The liberty interest

 here implicated—the freedom to seek further employment—was offended not by her

 dismissal alone, but rather by her dismissal upon alleged unsupported charges which,

 left unrefuted, might wrongfully injure her future placement possibilities.”).

¶ 39 Sergeant Mole’ also argues that his dismissal was arbitrary and capricious,

 giving rise to a claim for violation of his due process rights “to continued employment

 when Defendant arbitrarily terminated [him].” But our Supreme Court has held that

 an at-will employee has no right to continued employment, and thus arbitrary
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 conduct by an at-will employer does not state a cognizable violation of the due process

 protections of the North Carolina Constitution. See Tully, 370 N.C. at 538-39, 810

 S.E.2d at 216-17 (holding Tully’s allegations that the City of Wilmington “arbitrarily

 and irrationally deprived [him]” of an alleged “property interest in his employment

 with the City” failed to state a valid due process claim under the North Carolina

 Constitution because, per Presnell, at-will public employees have no cognizable

 property interest in continued employment).

¶ 40 To be sure, this Court has recognized violations of state and federal substantive

 due process protections without requiring the plaintiff allege or demonstrate the

 deprivation of a recognized property or liberty interest where the State’s conduct was

 “so egregious that it shocks the conscience or offends a sense of justice.” Toomer v.

 Garrett 155 N.C. App. 462, 470, 574 S.E.2d 76, 84 (2002). But that case, unlike Tully,

 did not involve an employment decision. It instead concerned a state agency’s public

 disclosure of an employee’s personnel file, including social security number, medical

 diagnoses, and personal financial data, without any rational relationship to any

 governmental interest. 155 N.C. App. at 472, 574 S.E.2d at 85.8 In contrast to

 8 Sergeant Mole’ cites a United States Supreme Court decision holding that Oklahoma

 state employees’ federal substantive due process protections were violated by their
 employer’s arbitrary and capricious conduct, without finding that the employees had a
 property or liberty interest in the employment. Wieman v. Updegraf held that a statute
 requiring state employees to take a loyalty oath asserting they were not affiliated with
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 Toomer, a holding here that Sergeant Mole’s allegedly arbitrary and capricious

 termination violated his substantive due process rights, without a cognizable

 property interest in continued employment, would effectively hold that he could not

 be terminated except for cause. As discussed above, North Carolina employees do not

 enjoy that substantive due process protection unless it is explicitly incorporated into

 their employment contract or promulgated by statute or ordinance.

 2. Equal Protection

¶ 41 Sergeant Mole’ also asserts that Durham subjected him to disparate treatment

 as compared to similarly situated employees. His complaint cites examples of

 misconduct by other Durham police officers that he alleges were more egregious than

 the actions that led to his termination.

¶ 42 Both our federal and state constitutions guarantee that individuals receive

 “the equal protection of the laws.” N.C. Const. Art. I, § 19; U.S. Const. amend. XIV,

 § 1. The equal protection clause of the United States Constitution’s Fourteenth

 communist organizations was unconstitutional. 344 U.S. 183, 191, 97 L. Ed. 216, 222 (1952).
 However, Weiman did not specifically address, and lower federal court decisions have not
 held, that arbitrary termination from at-will employment gives rise to a substantive due
 process claim. See, e.g., Darr v. Town of Telluride, Colo, 495 F.3d 1243, 1258 (10th Cir. 2007)
 (observing Wieman did not address at-will employment and holding a town could terminate
 a marshal, even for allegedly arbitrary and capricious reasons, because “[t]he substantive-
 due-process clause does not forbid a public employer from terminating its at-will employees
 without cause”); Singleton v. Cecil, 176 F.3d 419, 423-24 (8th Cir. 1999) (“[T]he defendants’
 alleged arbitrary and capricious firing of Officer Singleton, an at-will employee[,] . . . did not
 violate his substantive due process rights.”).
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 Amendment “has been expressly incorporated in Art. I, § 19 of the Constitution of

 North Carolina,” S.S. Kresge Co. v. Davis, 277 N.C. 654, 660, 178 S.E.2d 382, 385

 (1971), and the same analysis applies to both. Toomer, 155 N.C. App. at 476, 574

 S.E.2d at 88; see also Richardson v. N.C. Dep’t of Corr., 345 N.C. 128, 134, 478 S.E.2d

 501, 505 (1996) (applying “the same test as federal courts” to determine whether

 limiting working prisoners’ remedy to workers’ compensation violates their right to

 equal protection).

¶ 43 A typical equal protection claim alleges that the plaintiff was treated

 differently by legislation or a state actor due to their membership in a suspect class:

 race, color, religion, national origin, etc. See Engquist v. Or. Dep’t of Agric., 553 U.S.

 591, 601, 170 L. Ed. 2d 975, 985 (2008). Where the treatment varies based upon a

 suspect class or impacts a fundamental right, we apply strict scrutiny and determine

 whether the state action is necessary to promote a compelling government interest.

 State ex. rel. Utils. Comm’n v. Carolina Util. Customers Ass’n, 336 N.C. 657, 681, 446

 S.E.2d 332, 346 (1994). The United States Supreme Court and, in turn, North

 Carolina courts, have also recognized the existence of “class of one” equal protection

 claims in which plaintiffs allege they were intentionally treated differently from

 others similarly situated. Village of Willowbrook v. Olech, 528 U.S. 562, 564, 145 L.

 Ed. 2d 1060, 1063 (2000); In re Application of Ellis, 277 N.C. 419, 424, 178 S.E.2d 77,

 80 (1970) (recognizing “the constitutional limitation forbidding arbitrary and unduly
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 discriminatory interference with the right of property owners”). When the plaintiff

 is not a member of a suspect class and does not assert wrongful termination in

 violation of a fundamental right,9 “it is necessary to show only that the classification

 created by the [government action] bears a rational relationship to some legitimate

 state interest.” Richardson, 345 N.C. at 134, 478 S.E.2d at 505 (citation omitted).

¶ 44 Sergeant Mole’ asserts a class-of-one claim by arguing that he was situated

 similarly to other Durham police officers who violated department policies and

 received significantly less severe discipline. The United States Supreme Court has

 recognized this type of claim in relation to real property rights. In Olech the Court

 held the complaint, alleging that the defendant arbitrarily required the plaintiff to

 cede a larger easement than her neighbors in order to connect to the municipal water

 supply, was sufficient to state a class-of-one claim. 528 U.S. at 565, 145 L. Ed. 2d at

 1063-64. Previous Supreme Court decisions also recognized this type of claim without

 explicitly identifying the claims as “class-of-one.” See Sioux City Bridge Co. v. Dakota

 Cty., 260 U.S. 441, 446-47, 67 L. Ed. 340, 343 (1923) (holding that assessing property

 at 100% of its true value when all other property in the county was evaluated at 55%

 violated equal protection); Allegheny Pittsburgh Coal Co. v. Cty. Comm’n of Webster

 9 Fundamental rights recognized by the United States Supreme Court include the

 right to vote, the right of interstate travel, rights guaranteed by the first amendment such
 as freedom of expression and religion, and the right to procreate. Carolina Utility Customers
 Ass’n, 336 N.C. at 681 n.6, 446 S.E.2d at 346 n.6 (1994).
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 Cty., 488 U.S. 336, 341-43, 102 L. Ed. 2d 688, 695-96 (1989) (holding assessment

 methodology that produced “dramatic differences in valuation” between petitioners’

 property and comparable surrounding land violated equal protection).

¶ 45 But the United States Supreme Court has held that class-of-one claims cannot

 be stated in the employment context. In Engquist, the plaintiff asserted a class-of-

 one equal protection claim against her employer, alleging that she was terminated

 for arbitrary, vindictive, and malicious reasons. 553 U.S. at 595, 170 L. Ed. 2d at

 982. A coworker who had personal issues with the plaintiff formed an alliance with

 an assistant director who had assured a client that the plaintiff would be “gotten rid

 of.” Id. at 594, 170 L. Ed. 2d at 981. The plaintiff was then passed over for a

 promotion in favor of a less-qualified coworker and told that she could only stay with

 the department if she accepted a demotion. Id. at 595, 170 L. Ed. 2d at 981.

¶ 46 While the Court recognized that the equal protection clause’s protections apply

 to administrative as well as legislative acts and that states do not escape its

 requirements in their role as employers, it distinguished between the government

 taking action as a regulator and the government taking action “as proprietor, to

 manage its internal operation.” Id. at 598, 170 L. Ed. 2d at 983 (cleaned up). The

 Engquist Court noted that some forms of state action, including employment

 decisions, “involve discretionary decisionmaking based on a vast array of subjective,

 individualized assessments.” Id. at 603, 170 L. Ed. 2d at 987. The Court reasoned
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 that as opposed to the regulation of third parties, treating similarly situated

 employees differently is “par for the course.” Id. at 604, 170 L. Ed. 2d at 988. The

 Court characterized class-of-one claims in the public employment context as “contrary

 to the concept of at-will employment,” id. at 606, 170 L. Ed. 2d at 989, and held that

 “the class-of-one theory of equal protection has no application in the public

 employment context[.]” Id. at 607, 170 L. Ed. 2d at 989.

¶ 47 We must again consider whether the analogous clause in the North Carolina

 Constitution is more protective and extends the guarantee of equal protection in the

 public employment context. As with due process, the fact that the Fourteenth

 Amendment does not provide a cause of action for Sergeant Mole’ does not necessarily

 foreclose the possibility that our state Constitution could yield a remedy: the United

 States Constitution is the floor of constitutional protections in North Carolina, not

 the ceiling. See State v. Carter, 322 N.C. 709, 713, 370 S.E.2d 553, 555 (1988). The

 North Carolina Constitution is to be liberally construed, especially the provisions

 safeguarding individual liberty and property rights. Tully, 370 N.C. at 533, 810

 S.E.2d at 214.

¶ 48 However, precedent precludes us from unfettered liberal analysis. This Court

 has clearly and explicitly held that the equal protection rights guaranteed by the

 North Carolina Constitution are the same as those in the United States Constitution,

 and the analysis under each is the same. Toomer, 155 N.C. App. at 476, 574 S.E.2d
 MOLE’ V. CITY OF DURHAM

 2021-NCCOA-527

 Opinion of the Court

 at 88. We have searched without success for decisions holding otherwise. Our review

 reveals no decision in North Carolina recognizing class-of-one claims in the

 employment context. We are bound by our existing precedent. Johnson v. State, 224

 N.C. App. 282, 297, 735 S.E.2d 859, 871 (2012). But the final arbiter of the North

 Carolina Constitution is the North Carolina Supreme Court. Lea Co. v. N.C. Bd. of

 Transp., 308 N.C. 603, 610, 304 S.E.2d 164, 170 (1983). Because our constitution is

 to be liberally construed, we urge the Supreme Court to address this issue.10

 III. CONCLUSION

¶ 49 For the reasons explained above, we hold that the trial court erred in

 dismissing Sergeant Mole’s claim for violation of his right to the fruits of his labor

 and reverse that portion of the trial court’s order. We affirm the trial court’s dismissal

 of Sergeant Mole’s remaining claims. The matter is remanded to the trial court for

 further proceedings not inconsistent with this opinion.

 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

 JUDGES ZACHARY AND CARPENTER concur.

 10 In dissent, Justice Stevens characterized the Engquist majority’s exclusion of public

 employees as applying a “meat-axe” to resolve an issue better addressed with a scalpel. 553
 U.S. at 610, 170 L. Ed. 2d at 991. It is not necessary that protections provided by our state
 constitution exclude the same broad category of claims.